UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BETTY ANGELL,

                         Plaintiff,

            -v-

THE GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA,

                         Defendant.

22-CV-4169 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

        In this ERISA action, Plaintiff Betty Angell sues Defendant Guardian Life Insurance

Company of America ("Guardian"), alleging that Guardian improperly terminated long-term

disability benefits and a waiver of premiums owed to her under her life insurance policy.  Before

the Court is Guardian's motion to transfer this action to the United States District Court for the

District of Rhode Island pursuant to 28 U.S.C. § 1404(a).  For the following reasons, Guardian's

motion is granted and this action is transferred to the District of Rhode Island.

I.      **Background**[1]

        Angell resides in Providence County, Rhode Island, and worked for Stoltenberg

Consulting, Inc. ("Stoltenberg").  (Compl. ¶¶ 4, 8.)  Through her employer, she enrolled in the

Stoltenberg employee welfare benefit plan with insurance by Guardian.  (Compl. ¶¶ 9 – 10.)

This plan included, through its life insurance policy, $30,000 in basic term life insurance

coverage and $170,000 in optional term life insurance coverage.  (Compl. ¶ 13.)  Under the plan,

---

[1] The following facts, drawn from the Complaint (ECF No. 1 ("Compl.")), are presumed
true for the purposes of this Opinion and Order.

1

if a participant became disabled while covered, coverage would continue, and Guardian would waive life insurance premiums.   (Compl. ¶ 14.)

Angell alleges that she ceased working on October 5, 2018, due to medical conditions including migraines, osteoarthritis, fibromyalgia, TMJ, spinal issues, and other conditions.  She was at the time covered by the plan.  (Compl. ¶ 16.)  She applied for long-term disability benefits under her employee welfare benefit plan in April 2019; Guardian approved her application in June 2019.  (Compl. ¶¶ 18 – 19.)  Guardian paid Angell benefits from January 3, 2019 through September 2020.  (Compl. ¶ 19.)  Then, Guardian terminated her long-term disability benefits and shortly thereafter, her premium waiver, because Guardian's in-house Nurse Case Manager opined that Angell could perform her occupation.  (Compl. ¶ 20.)

Angell appealed.  Guardian's in-house medical experts, in their review, concluded that Angell would reasonably be bedridden four days a month due to her migraines.  (Compl. ¶ 25.)  Guardian denied Angell's appeal, however, because it concluded that there was no evidence that Angell would necessarily be incapacitated during the work week, as opposed to on weekends.  (Compl. ¶ 25.)  Angell further alleges that Guardian was required to pay her benefits from its own funds, and therefore was conflicted when making its decision about her eligibility.  (Compl. ¶¶ 31 – 32.)

## II.    Legal Standard

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  To determine whether transfer is appropriate, a district court asks "whether the action could have been brought originally in the transferee forum."  *Siegel v. Ford*, No. 16 Civ. 8077, 2017 WL 4119654, at *7 (S.D.N.Y. Sept. 15, 2017).  It then considers "whether transfer would be an appropriate exercise of the Court's

discretion." *Robertson v. Cartinhour*, No. 10 Civ. 8442, 2011 WL 5175597, at *3 (S.D.N.Y.

Oct. 28, 2011).  A district court has "broad discretion" to decide whether to transfer an action to

another district.  *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992).

### III.   Discussion

The first question is whether this action could have been brought originally in the District

of Rhode Island.  An ERISA enforcement action "may be brought in the district where the plan is

administered, where the breach took place, or where a defendant resides or may be found." 29

U.S.C. §1132(e)(2).  Both parties agree that this action could have been brought in the District of

Rhode Island, as that is "where the breach took place."  (*See* ECF No. 15 at 2.)

The next consideration is whether transfer would be an appropriate use of this Court's

discretion.  To determine whether transfer is appropriate, the Court balances nine factors: "(1)

the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant

documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5)

the availability of process to compel the attendance of unwilling witnesses; (6) the relative means

of the parties; (7) the forum's familiarity with the governing law (8) the weight accorded the

plaintiff's choice of forum; and (9) trial efficiency and the interests of justice." *SEC v. Hill Int'l,*

*Inc.*, No. 20 Civ. 447, 2020 WL 2029591, at *3 (S.D.N.Y. Apr. 28, 2020) (internal quotation

marks omitted).  Those factors counsel in favor of transfer here.

#### A.      Factors Favoring Transfer

The first factor the Court considers is the convenience of the witnesses.  "The

convenience of witnesses is often one of the most important considerations in deciding a motion

to transfer." *Sec. & Exch. Comm'n v. Am. Renal Assoc. Holdings*, No. 21 Civ. 10366, 2022 WL

1166087, at *3 (S.D.N.Y. Apr. 20, 2022).  Here, Angell contends that this factor is due little

deference because this is an ERISA case, and thus likely to be litigated on the briefs without

discovery outside of the Administrative Record.  To decide the scope of discovery in this case at this juncture, however, would be premature.  *See Nuss v. Guardian Life Ins. Co. of Am.,* 20 Civ. 9189, 2021 WL 1791593, at *4 (S.D.N.Y. May 5, 2021).  ("[A]t this stage, this factor remains relevant since the Court is not prepared to assume that no witness testimony will be needed.")  While the posture of this case may render this factor — ordinarily the "single most important factor" — less significant than in cases where witnesses will "undoubtably" be required, it does not follow that it is wholly irrelevant.  *Id.*

Here, the convenience of witnesses weighs in favor of transfer.  Angell lives in Rhode Island, as do her treating physicians.  (*See* ECF No. 15 at 6, acknowledging that Guardian has identified Angell's treating physicians and ECF No. 14, identifying these doctors as potential witnesses.)  Because the Court is not prepared to rule out soliciting testimony from these potential witnesses, it must consider their convenience.  Undoubtably, Rhode Island would be the more convenient forum in this respect.  The District of Rhode Island would also possess subpoena power extending to these witnesses, where this court does not.

The second consideration is the locus of operative facts.  The locus of operative facts is also a "primary factor in determining a § 1404(a) motion to transfer" that "substantially favors transfer from this district when a party has not shown that any of the operative facts arose in the Southern District of New York."  *Hill Int'l*, 2020 WL 2029591, at *4 (internal citation and quotation marks omitted).  In determining the locus of operating facts in ERISA cases, "courts consider, *inter alia*, where the plaintiff lived, worked, applied for benefits, and received payments."  *Nuss*, 2021 WL 1791593 at *7.  Here, those events all occurred in the District of Rhode Island.  To the extent that Plaintiff seeks to shift the focus to where Guardian made the decision to terminate her benefits, that locale is in fact Pennsylvania, where Guardian's claims

4

team is located.  (*See* ECF No. 13 at 1.)  Thus, though Guardian maintains a corporate headquarters in New York, nothing else ties this case to this judicial district.  Meanwhile, it has several significant ties to the District of Rhode Island.  Accordingly, this factor weighs strongly in favor of transfer.

**B.      Factors Weighing Against Transfer**

The sole factor weighing against transfer is Angell's choice of forum.  "It is well settled that the plaintiff's choice of forum is given great weight."  *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 347 (E.D.N.Y. 2012).  This is true particularly in ERISA cases because "Congress purposefully enacted a broad venue provision for ERISA."  *Nuss*, 2021 WL 1791593 at *3.  Yet even in ERISA cases, this factor is "not controlling," as "to rule otherwise would render Section 1404(a) all but meaningless."  *Id.* (internal quotations omitted.)  As in other cases, the plaintiff's choice of venue is given less deference where (1) the operative facts have little connection to the chosen district or (2) the plaintiff's residence is not the chosen forum.  *See Easy Web*, 888 F. Supp. 2d at 348 – 49.  "When the operative facts have few meaningful connections to the plaintiff's chosen forum," the importance of the plaintiff's choice "measurably diminishes."  *Harris v. Brody*, 476 F. Supp. 2d 405, 406 (S.D.N.Y. 2007).  As discussed, the operative facts in this case have no connection to this district, nor does Angell here reside.

Defendant contends that, considering Angell's residence elsewhere, her choice of this forum is simply forum shopping to take advantage of the precedent created by *Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42, 58 (2d Cir. 2016).  The Court does not need to address this argument.  Each of the other factors is either neutral or weighs in favor of transfer, overcoming the deference due to Angell's choice of forum without the need to weigh Guardian's accusations of forum shopping.

###    C.    Neutral Factors

The remaining factors are neutral and do not affect the transfer analysis.  First, Angell's claim that she would be inconvenienced by fees associated with out-of-district counsel in Rhode Island is unpersuasive, particularly as her attorney is not located in New York either.  Nor can Angell plausibly argue that she would be inconvenienced by litigating in her home forum.  The location of relevant documents is of little consequence in this case.  *See Starr Indem. & Liab. Co. v. Brightstar Corp.,* 324 F. Supp. 3d 421, 441 (S.D.N.Y. 2018) ("In an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly.").  This is particularly so in an ERISA case, where aside from the possible witness testimony referenced above, the evidence is likely to consist largely of documents that may be transferred electronically.  Neither party has submitted arguments regarding their relative means.  Finally, both forums are equally familiar with the governing law and this case is at an early stage such that it will not create inefficiencies to transfer it to the District of Rhode Island.[2]

## IV.    Conclusion

For the foregoing reasons, Defendant's motion to transfer is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 12 and to transfer this case to the United States District Court for the District of Rhode Island.

SO ORDERED.

Dated: February 23, 2023
      New York, New York

                                      J. PAUL OETKEN
                           United States District Judge

---

[2] This also distinguishes this case from *Jedlicka v. The Guardian Life Ins. Co. of America*, No. 22 Civ. 3869, where the parties submitted briefing on the law of the case prior to the transfer hearing.  (*See* ECF No. 21-1.)